(No. 39105.—

THE PEOPLE *ex rel.* The County Collector of St. Clair County, Appellee, *vs.* ALLAN BOSTWICK, Appellant.

*Opinion filed May 20, 1965.—Rehearing denied September 27, 1965.*

TURNER, HOLDER & ACKERMAN, of Belleville, for appellant.

JOHN M. KARNS, JR., State's Attorney, of Belleville, (EUGENE H. WIDMAN, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Allan Bostwick appealed directly to this court from an order of the circuit court of St. Clair County dismissing his objections to the 1959 and 1961 taxes upon his real

estate. Jurisdiction on direct appeal is found in the involvement of the revenue.

Objector appeared before the board of review in the quadrennial assessment year of 1958 alleging the assessed valuation of his real estate was excessive. The board granted nominal relief by reducing the assessed value $900. Thereafter objector filed objections to the collector's application for judgment for the 1958 taxes, and the court, by order entered October 13, 1961, reduced the assessed valuation by one third from $90,144 to $60,096, and ordered a proportionate refund.

Objector did not seek relief before the board of review in 1959 or 1961, but did appear in 1960. He filed objections in the county court for each of the years, 1959, 1960 and 1961, on the same basis as for 1958. His objections for 1960 were sustained and refund ordered as for 1958, but his 1959 and 1961 objections were dismissed on motion alleging his failure to seek administrative relief before the board of review in those years. The assessed valuation as determined by the assessing authorities to which objection was made remained the same for all years.

The question presented is as to whether a taxpayer who has unsuccessfully appeared before the board of review in a quadrennial assessment year, and whose assessed valuation remains unchanged during intervening years, must request relief before the board of review in each of such intervening years before seeking judicial review. Objector's position is that our statutory scheme for the taxation of real property contemplates no change in assessed valuation except during a quadrennial year unless an intervening change occurs in the physical condition of such property. Therefore, it is contended, a taxpayer need appear before the board of review as a prerequisite to pursuing his tax objection remedy in the circuit court, only in those years in which a change in assessed valuation has occurred. Having appeared in 1958 with only nominal success, objector maintains he should

not be barred from judicial consideration of the merits of his objections for 1959 and 1961 by reason of his failure to repeat what he argues would have been a useless act.

We recently held (*People ex rel. Nordlund* v. *Lans,* 31 Ill.2d 477) that failure of a taxpayer to present his complaint of fraudulent overvaluation to the board of review in 1959 and 1960 precluded subsequent consideration thereof by the county court. Neither of those years involved a quadrennial assessment, and while the record there contained no indication that the taxpayer had ever appeared before the board, the language of that opinion is persuasive here. We said, quoting *Sanitary District of Chicago* v. *Young,* 285 Ill. 351, 368: "It has been frequently declared by this court that it is the policy of our law that the whole matter of the valuation of property for taxation shall be committed to the control of the assessor, the board of review and the board of supervisors of the respective counties, and that a party aggrieved by an excessive valuation, fraudulently or otherwise made, should apply to the board of review for a correction of the assessment. The statutory provisions concerning the taxpayer's right to have the assessor's valuation of his property for taxation reviewed by the board of review are intended to provide adequate protection against fraudulent or excessive assessments of every kind and character."

In our *Lans* holding that the county court there erred in sustaining the objections in the absence of a showing that the taxpayer had pursued his remedy before the board of review, we made no distinction between quadrennial and nonquadrennial years. No such distinction is made in any other case considering the necessity of appearance before the board. Nor does section 108 of the Revenue Act of 1939 (Ill. Rev. Stat. 1959, chap. 120, par. 589,) so distinguish. Subparagraph (4) thereof provides: "On complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment,

and correct the same, as shall appear to be just. Such complaint to affect the assessment for the *current* year shall be filed on or before [specifying final filing dates] * * *". (Emphasis ours). While objector argues the use of the word "current" should be construed as referring to those assessments in intervening years made by reason of physical changes in the property pursuant to section 44, (Ill. Rev. Stat., 1959, chap. 120, par. 525,) a more logical interpretation, in our judgment, is that its use was prompted by contemplation of the desirability of requiring the taxpayer to present his complaint to the board of review in nonquadrennial years as well as quadrennial ones.

In our opinion one of the purposes in providing for consideration by the board of review of alleged assessment errors in each year was to provide a simple, economical and expeditious method whereby a taxpayer might secure a review thereof. While objector argues that since no change in assessed value can be made without notice in years intervening between quadrennial ones, and, since no change was made and no notice given, he should not be required to perform a useless act and duplicate his 1958 appearance, this argument is predicated upon his assumption that had he presented his complaint to the board in 1959 and 1961 relief would have been denied. While it is possible that this result would have obtained, such is not a necessary conclusion, for even though the basis for complaint was similar in each year, different methods of proof might have been used, personnel of the board might have been altered, or, if the facts and personnel remained identical, the opinion of the board might have changed. Although objector's argument is not without force, we believe it would be a perversion of the manifest statutory intent were we to hold that the statute contemplates appearance before the board of review only in a quadrennial year or an intervening year in which a change in valuation is made. No authority is cited to sustain this position, and a firm foundation for it cannot be

found in the assumption that it would be useless to require appearance in other years since no relief would be granted.

Objector's final contention is that the 1961 order of the county court sustaining the 1958 objections is *res judicata* as to the 1959 and 1961 assessed valuations. Principal reliance is placed upon *Graceland Cemetery Co.* v. *People ex rel. McCrea,* 92 Ill. 619. There the county court in 1873 sustained objections to taxes for 1871 and 1872 on the ground the real estate involved was exempt from taxation. In 1875 a similar judgment was rendered as to the taxes for 1873 and 1874. Neither judgment was appealed from. In 1879 application was made for judgment against the same land for taxes for the *same* years. This court correctly held the 1873 and 1875 judgments were *res judicata* as to the 1879 suit, but that holding does not assist objector here, for the application for judgment with which we are concerned is for years other than 1958. Thus, the identity of the causes of action found in *Graceland* is presently lacking, and its absence renders the *res judicata* principle inapplicable. See *People* v. *Kidd,* 398 Ill. 405.

We accordingly hold the circuit court of St. Clair County properly dismissed the objections to the 1959 and 1961 taxes, and its judgment is affirmed.

*Judgment affirmed.*